IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ESTATE of LaTEEF J. DOTSON**, through **DIANE C. DOUGLAS** (estate administrator and individually), and **RASHAR DIXON**,<br>Plaintiffs,<br><br>v.<br><br>**GARY W. GRAY TRUCKING INC.**, and **BRANDON R. LOYLE**,<br>Defendants. | Civil Action No. 23-cv-4072<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

## I.   INTRODUCTION & INITIAL ALLEGATIONS

1. This non-federal question case is filed in this judicial district based on the parties' diversity of citizenship, and remedies for the claims asserted exceed $75,000.00.

2. Citizens of the state of Delaware sue citizens of Pennsylvania, Gary W. Gray Trucking, Inc. (Gray), and Brandon R. Loyle (Loyle) for survival, and wrongful death liability under 10 Del. C. § 3701, and 10 Del. C. § 3724, respectively.

3. Gray owns, leases, and/or otherwise operates heavyweight commercial vehicles, and has employed Loyle for the company's financial benefit.

4. On May 2, 2022, shortly after 10:00 a.m. on a clear-weather, and inclement free day, Loyle negligently steered and failed to maintain directional control of a 33,000-pound-plus 2006 Sterling LT9500 truck that Gray utilized for its business.

5. After crossing solid double yellow lines that divided a two-way road, Loyle unlawfully directed the heavyweight vehicle into oncoming traffic.

1

6. The catastrophic consequence of Loyle's negligence were the serious injuries to and the untimely death of LaTeef J. Dotson (Lateef or decedent), the CDL (Commercial Driver's License) holder and operator of the truck Loyle rammed into head-on.

7. LaTeef was a 40-year-old single male, and left his mother, brother, and two minor sons to mourn his death and bear the pain of the loss of his love, care, and support.

8. In addition to the wrongful death, and survival causes of action, the plaintiffs allege negligence per se, they also claim that defendants are liable for punitive damages, and they sue Gray for negligent hiring and retention of Loyle.

## II.   JURISDICTION AND VENUE

9. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332(a)(1), and venue is appropriate under 28 U.S.C. § 1391(b)(1).

## III.   PARTIES AND PRELIMINARY BACKGROUND

10. Decedent LaTeef J. Dotson, a citizen of Delaware, had lived at 441 South Street, Townsend, DE 19734—the family home.

11. Diane C. Douglas (Ms. Douglas) lives in the family home, and sues in her official and individual capacities, as administrator of her son's estate, and mother, respectively.

12. Rashar Dixon (Rashar), a citizen of Delaware, is LaTeef's older brother by about 18 months and resides in the family home.

13. Through LaTeef's encouragement and guidance Rashar was also a CDL trucker.

14. Rashar and LaTeef were remarkably close companions who supported each other, vacationed together, and dutifully relished the responsibilities of living in the family home with their mom.

15. Defendant Brandon R. Loyle is a citizen of Pennsylvania. His commercial driver's

license was issued here, and the police accident report underlying this case confirms his Pennsylvania residence as 6100 Del Haven Road, Bangor, PA 18013.

16. On May 2, 2022, Loyle was a Gary W. Gray Trucking, Inc. CDL operator.

17. Defendant Gary W. Gray Trucking, Inc. is a citizen of Pennsylvania, incorporated on March 27, 2006, and the Department of State lists its license number as 597665.

18. The in-state agent for service of process upon Gray is Stevens and Johnson, 740 Hamilton Mall, Allentown, PA 18101.

19. Gray is also incorporated in New Jersey and its business address there is 56 Route 46, Delaware, NJ 07833.

20. Gray's U.S. Department of Transportation (USDOT) interstate number is listed as 184628, and its motor carrier (MC) number is listed as 146182.

## IV. ADDITIONAL FACTUAL BACKGROUND

21. All preceding paragraphs are fully included here.

22. The late LaTeef J. Dotson was a truck driver for Bay Shippers, LLC, domiciled at 4035 Jimbo Drive, Burton, MI 48529, and pursuant to the Delaware Division of Corporations is also incorporated there to conduct business under registration number 7265540.

23. LaTeef earned $75,000.00 or more annually as a CDL operator.

24. On May 2, 2022, in the course and scope of his employment LaTeef was driving Bay Shippers' 2020 Western Star 4700 truck on County Road 519, Hope Township, NJ.

25. The speed limit along this two-lane stretch is fifty mph, which LaTeef obeyed.

26. Defendant Loyle disregarded state laws, traffic-related regulations in particular.

27. In 2016, Loyle disobeyed two and was found guilty of operating an unregistered vehicle without valid inspection and driving such a vehicle.

28. In June 2021 he was cited for withholding an address change.

29. Loyle never obtained a New Jersey issued CDL.

30. In January 2022, Loyle violated N.J.S.A. 39:4-88, section (e), the "Traffic on [clearly] Marked Lanes" law, which states in part that "no truck of 10,000 pounds registered gross weight or over shall be driven in the farthest left-hand lane", except in circumstances that did not apply to Loyle.

31. On March 4, 2022, just two months before seriously injuring and causing LaTeef's death, Loyle was found guilty of operating a vehicle without valid inspection—again.

32. Loyle's disobedience of traffic laws is so well documented that Gray should have known about his habitual violations and the danger he posed to the public.

33. At approximately 10:22 a.m. on May 2, 2022, while driving a 2006 Sterling LT9500 dump truck for his employer Gary W. Gray Trucking, Inc., Loyle failed to keep to the right, carelessly allowing the vehicle to stray across yellow double lines and smash head-on into the truck LaTeef was driving.

34. Two traffic summonses were issued to Loyle: one for careless driving in violation of N.J.S.A. 39:4-97 (summons 2111E22000790), and another for not staying to the right in violation of N.J.S.A. 39:4-82 (summons 2111E22000791).

35. In violation of New Jersey's seat belt law (NJSA 39:3-76.2f) Loyle's seatbelt was unbuckled when he careened into the Western Star truck.

36. LaTeef wore his seatbelt but when Gray's truck barreled into the Western Star, he was ejected from the vehicle.

37. Being ejected from Western Star caused LaTeef conscious pain and suffering.

38. The defendants' negligence triggered LaTeef's unwelcome agony, profound anguish,

physical injuries, and his death.

39. Morris County medical examiner, Di Wang, M.D., performed the decedent's autopsy.

40. Dr. Wang's pathological diagnoses were that blunt force injuries to the decedent's head, neck, torso, and extremities, all sustained in the accident, caused his death.

41. The severity of LaTeef's injuries was evident to accident scene first responders.

42. Post accident someone located LaTeef's Apple iPhone.

43. The iPhone could not be unlocked by facial recognition or LaTeef's fingerprint.

44. The iPhone was password protected by a 6-digit code.

45. LaTeef's iPhone contact list did not identify his brother Rashar by name.

46. Following LaTeef's accident Rashar got an incoming call from his brother's iPhone.

47. Rashar answered but did not recognize the man's voice who asked him to confirm his name and relationship to LaTeef before stating that he was a police officer.

48. Rashar surmised LaTeef had shared the password for his mobile phone and revealed that "Bro" in the iPhone's list of contacts was the code name for Rashar.

49. So he thought LaTeef was alive but such hope for his brother's survival was dashed when the officer said LaTeef had died from injuries sustained in a head-on collision.

50. Since then, life changed immeasurably for LaTeef's family.

51. For Ms. Douglas, his estate administrator and mom, her son's absence is an unkind recurring pain that worsens when she thinks of the chilling moments that preceded LaTeef's premature and painful death that the defendants carelessly caused.

52. Gray was subject to, but departed from state and federal laws, statutes, regulations, and industry standards that govern the hiring of safe and qualified commercial drivers, and the safe maintenance and operation of commercial motor vehicles.

53. Gray made the conscious choice to hire Loyle, a person with a history of driving violations, thereby increasing the risk of harm to the general motoring public.

54. "Driving a Commercial Motor Vehicle (CMV) requires a higher level of knowledge, experience, [and] skills … than that required to drive a non-commercial vehicle…. CDL holders are held to a higher standard when operating any type of motor vehicle on public roads."  https://www.fmcsa.dot.gov/registration/commercial-drivers-license.

55. The defendants also knew or should have known that the Federal Motor Carrier Safety Administration (FMCSA) regulations are specifically designed to prevent crashes and fatalities, and to keep the motoring public and others safe from harm.

56. The fundamental purpose and scope of FMCSA regulation 49 C.F.R § 383.1(a) "is to help reduce or prevent truck and bus accidents, fatalities, and injuries … by disqualifying drivers who operate commercial motor vehicles in an unsafe manner."

57. The regulation at 49 C.F.R. § 383.1(b)(3) dictates that when applying for employment as a commercial motor vehicle operator an applicant must provide previous employment information.

58. Loyle failed to satisfy 49 C.F.R § 383.1(b)(3) to the extent required and Gray did not compel full compliance.

59. As a registered interstate carrier, Gray is subject to all federal, and specific state statutes, laws, regulations, and industry standards, including without limitation Title 49, Code of Federal Regulations (CFR), and the Pennsylvania, and New Jersey acts that govern commercial vehicles, their safe maintenance, and operation, and dictate polices for hiring qualified commercial drivers.

60. To get a U.S. Department of Transport (DOT) number, Gray had to submit an

operating authority (OP-1) form to the FMCSA that includes a "Safety Certification" that Gray had access to and was familiar with all applicable DOT regulations related to the safe operation of commercial motor vehicles and that it would always comply with the FMCSA regulations while operating commercial motor vehicles nationwide.

61. Gray's OP-1 certified to the FMCSA that, at a minimum, it:

    a. had and will have in place a system and an individual responsible for ensuring overall compliance with the regulations.

    b. had and will have in place a driver safety training/orientation program.

    c. had and will maintain an accident register.

    d. is familiar with DOT regulations governing driver qualifications and has in place a system for overseeing driver qualifications requirements.

    e. had and will have in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair, and maintenance.

    f. is familiar with, and had and will have a system for complying with all DOT regulations governing alcohol and controlled substances testing requirements; and

    g. will comply with all pertinent federal, state, local and tribunal statutory and regulatory requirements when operating within the United States.

62. The plaintiffs believe and therefore reasonably allege that despite its OP-1 certification Gray violated the controlling provisions in that, at a minimum, the defendant employer:

    a. Failed to professionally train, monitor, and/or supervise its employee drivers before allowing them to operate commercial trucks or equipment.

    b. Hired and/or continued to employ unqualified persons, including Loyle when

7

it knew or should have known that he, particularly, was unfit to safely operate a commercial vehicle, and that given his history of driving violations would put the driving public at risk.

c. Failed to adopt appropriate employee manuals and/or training procedures.

d. Failed to appropriately monitor and/or regulate drivers' actions.

e. Failed to enforce both written and unwritten company policies.

f. Failed to discipline employees for violations of the written and unwritten company safety policies, if any.

g. Failed to ensure that management, including Loyle's superiors, and its drivers knew of and complied with the FMCSA regulations, as well as other applicable rules, laws, and regulations that govern the operation of commercial vehicles.

h. Knowingly violated federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles.

i. Failed to act upon and remedy violations of 49 C.F.R. § 383.

j. Failed to act upon and remedy violations of 49 C.F.R. § 396.7, which forbids the unsafe operation of a commercial truck, and expressly states that "A motor vehicle shall not be operated in such a condition as to likely cause an accident or a breakdown of the vehicle." 49 C.F.R. § 396.7(a); and

k. Focused more on profits than on the safety of its drivers and the public.

63. Gray intentionally or negligently failed to exercise reasonable care to comply with applicable controlling statutory and regulatory provisions and thereby increased the

risk of harm to the motoring public, including the fatal crash that caused LaTeef's injuries and death.

64. Gray intentionally or negligently failed to "systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles … subject to its control." 49 C.F.R. § 396.3(a).

65. Gray intentionally or negligently disregarded its mandatory obligation to ensure that "[p]arts and accessories shall be [always in safe and proper operating condition]. These include those specified in [49 C.F.R. § 396.3(a)(1)] … and any additional parts and accessories which may affect safety of operation, including but not limited to, frame and frame assemblies, suspension systems, axles and attaching parts, wheels and rims, and steering systems." Id.

66. Gary W. Gray Trucking, Inc. ignored the foregoing regulatons, and others, and Brandon R. Loyle disobeyed traffic laws without discipline or repercussion.

### COUNT 1 – The Estate's Survival Action

67. All preceding paragraphs are fully included here.

68. The estate's survival action is against Gary W. Trucking, Inc., and Brandon R. Loyle.

69. The decedent's pre-impact fright, or legitimate window of mental anxiety is recoverable under Delaware's survival actions law. 10 Del. Code § 3701.

70. The decedent's pre-impact fright occurred in the moments he faced the inevitability of being hit head-on and anticipating severe post-collision injuries and suffering.

71. The decedent's estate is also entitled to pre- and post-impact damages based on his conscious awareness and fright of death or apprehension of impending severe injuries when ejected from the truck and into a forbidding forest-like landscape.

72. The two-lane roadway lacked any shoulder for LaTeef to avoid Gray's truck.

73. Loyle's reckless negligence was the proximate cause of LaTeef's fright and reasonable fear of immediate personal injury, including death.

74. As a direct and proximate result of the defendants' negligence, LaTeef sustained pecuniary loss, mental anguish, emotional pain, suffering, and death.

**WHEREFORE**, the estate of LaTeef J. Dotson demands judgment against Gary W. Gray Trucking, Inc., and Brandon R. Loyle, monetary compensation exceeding $25,000,000.00, including punitive damages, plus interest, costs, funeral and burial expenses, and any other relief the Court deems appropriate.

### COUNT 2 – The Individual Plaintiffs' Wrongful Death Action

75. All preceding paragraphs are fully included here.

76. The individual plaintiffs' wrongful death action is against Gary W. Trucking, Inc., and Brandon R. Loyle.

77. Under 10 Del. Code § 3724(a), the individual plaintiffs are entitled to damages for LaTeef's wrongful death.

78. In part, that section states: "(a) An action under this subchapter shall be for the benefit of the spouse, parent, child, and siblings of the deceased person." Id.

79. As a direct and proximate cause of defendants' negligence, LaTeef sustained serious injuries and death. Consequently, the individual plaintiffs here have sustained pecuniary loss, mental anguish, pain and suffering, and other damages.

**WHEREFORE**, plaintiffs demand judgment against Gary W. Gray Trucking, Inc., and Brandon R. Loyle, monetary compensation exceeding $25,000,000.00, including punitive damages, plus interest, costs, funeral and burial expenses, and any other a relief

the Court deems appropriate.

## COUNT 3 – Gray's Vicarious Liability (Respondeat Superior)

80. All preceding paragraphs are fully included here.

81. Gary W. Gray Trucking, Inc. is vicariously liable to plaintiffs for Loyle's negligence.

82. Gray employed Loyle as a driver, an activity that he performed in a senseless, careless manner, which was or should have been foreseeable to Gray.

83. Restatement (Second) of Agency § 213 provides,

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
> (a) in giving improper or ambiguous orders of in failing to make proper regulations; or
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:
> (c) in the supervision of the activity; or
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

84. Gray's liability is evident. Where, like here, the tortious action of an employee is within the scope of the employment, the employer is vicariously liable for the actions of the employee (or its agent). *Fisher v. Townsend's, Inc.*, 695 A.2d. 53, 58 (Del. 1997) ("The first general rule is that if the principal is the master of an agent who is a servant, the fault of the agent, if acting within the scope of employment, will be imputed to the principal by the doctrine of *respondeat superior.*") Id.

85. Loyle's careless driving in the course of employment with Gray is established by the summons issued for violating New Jersey's careless driving traffic law, N.J.S.A. 39:4-97, and the citation for straying over two solid yellow lines and not keeping to the right, N.J.S.A. 39:4-82. and Gray's liability is evident from its failure to comply with

regulations specifically designed to prevent crashes and fatalities.

86. Based on the facts and circumstances, Gary W. Gray Trucking, Inc. is vicariously liable to the plaintiffs for Loyle's negligence.

**WHEREFORE**, plaintiffs demand judgment against Gary W. Gray Trucking, Inc., monetary compensation exceeding $25,000,000.00, including punitive damages, plus interest, costs, funeral and burial expenses, and any other relief the Court deems appropriate.

### COUNT 4 – Gray's Negligent Hiring and Retention Liability

87. All preceding paragraphs are fully included here.

88. Gary W. Gray is liable to plaintiffs for negligent hiring of defendant Brandon R. Loyle, retaining him as an employee, and failing to professionally train and supervise him within the scope of his employment as a CDL trucker for the company.

89. Loyle's negligent conduct was within the scope of his employment.

90. Restatement (Second) of Agency § 228 provides: "(1) Conduct of a servant is within the scope of employment … if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master…." Each element is met.

91. Additionally, under Restatement (Second) of Agency § 213 a person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless.

92. Gray is liable for failure to adopt rules or follow regulations to prevent risk of harm to others, and for employing unqualified persons as drivers, Loyle included.

93. Negligence is based upon a failure to exercise the care that a prudent, reasonable person would exercise under the circumstances. *Robelen Piano Company v. Di Fonzo,* 169 A.2d 240, 244 (Del. 1961).

94. Gray did not adequately inquire, investigate, or research Loyle's employment history, criminal past, or motor vehicle record.

95. It is insufficient that when Gray hired Loyle, he may have possessed a valid commercial driver's license, the requisite baseline for a CDL operator.

96. Incident reports from Loyle's previous employers—not to exclude non-driving work—and his criminal dockets for convictions for dishonesty, i.e., thefts, and his historic disregard for traffic laws are evidence of the types of misconduct that should have put Gray on notice of Loyle's propensity to wreak havoc on the roadway.

**WHEREFORE**, plaintiffs demand judgment against Gary W. Gray Trucking, Inc., monetary compensation exceeding $25,000,000.00, including punitive damages, plus interest, costs, funeral and burial expenses, and any other relief the Court deems appropriate.

### COUNT 5 – Defendants' Negligence

97. All preceding paragraphs are fully included here.

98. The defendants are liable to plaintiffs for negligence.

99. Contrary to its duty and obligation, Gray neglected to exercise reasonable care and increased the risk of harm to LaTeef by failing to adequately service, and/or properly maintain the heavy-duty Sterling dump truck that employee Loyle operated.

100. Brandon R. Loyle had a duty to use due care while driving and to act reasonably but failed to do so.

101. Loyle's duty included, (a) to pay attention to traffic and maintain a proper lookout; (b) to obey the laws and rules of New Jersey, including safeguards regarding driver fatigue, and the bar on inappropriate use of mobile phones while driving; (c) to maintain proper speed for the conditions; (d) to reduce the speed of his truck to avoid an accident; (e) to drive on the right side of the road; (f) to maintain his vehicle within the correct lane; and (g) to pay full time attention to the operation of his vehicle to avoid a collision.

102. Loyle disobeyed his duties by negligently driving Gray's truck across double yellow lines, striking LaTeef's vehicle, causing serious physical injuries, conscious mental anguish, pain and suffering, and death.

103. The foregoing injuries were directly and proximately caused solely by the defendants' negligence.

**WHEREFORE**, plaintiffs demand judgment against Gary W. Gray Trucking, Inc., and Brandon R. Loyle, and monetary compensation exceeding $25,000,000.00, including punitive damages, plus interest, costs, funeral and burial expenses, and any other relief the Court deems appropriate.

### COUNT 6 – Negligence per se liability

104. All preceding paragraphs are fully included here.

105. Defendants are liable to plaintiffs under a negligence per se theory.

106. Motor vehicle statutes are enacted for the safety of the traveling public, and the facts prove the defendants are jointly and severally liable for negligence per se.

107. Gray egregiously failed to service and maintain the Sterling dump truck.

108. Loyle negligently crashed into the truck LaTeef was driving and got two summonses, including one for careless driving pursuant to N.J.S.A. 39:4-97.

109. That statute provides, "A person who drives a vehicle on a highway carelessly, or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property, shall be guilty of careless driving." Id.

110. N.J.S.A. 39:4-97 expressly prohibits negligent driving, and "[p]roof of the violation of the statute is proof of negligence itself… [because the law] incorporates the common-law standard of care. It would be inconsistent to find that [Loyle] had violated the statute but that [he] had not been negligent." *Eaton v. Eaton*, 119 N.J. 628, 642 (N.J. 1990).

111. Loyle's violation is negligence per se, which is also attributable to his employer.

**WHEREFORE**, plaintiffs demand judgment against Gary W. Gray Trucking, Inc., and Brandon R. Loyle, monetary compensation exceeding $25,000,000.00, including punitive damages, plus interest, costs, funeral and burial expenses, and any other relief the Court deems appropriate.

### COUNT 7 – Punitive Damages Entitlement

111. All preceding paragraphs are fully included here.

112. The plaintiffs are entitled to punitive damages.

113. "In any action for wrongful death, punitive damages may be awarded … [where] the death … was the result of reckless, willful or wanton misconduct by the tortfeasor." 10 Del. C. § 3724(6).

114. "[T]he unexplained departure of a car [or truck] from the roadway 'ordinarily bespeaks negligence.'" *Eaton*, 119 N.J. at 639 (citation omitted).

115. Both defendants are tortfeasors and accountable to the plaintiffs.

116. Brandon R. Loyle drove carelessly, without due caution and circumspection.

117. Gray neglected to exercise reasonable care and increased the risk of harm to LaTeef by—among other deficient action—failing to adequately service, and/or properly maintain the heavy-duty Sterling dump truck that employee Loyle operated.

118. Substantial evidence supports a punitive damages award for the plaintiffs: (a) trucks do not veer off course and into the path of oncoming traffic, and Loyle was cited for driving carelessly; (b) Loyle was speeding and/or distracted due to an unlawful reason, including exhaustion and/or unauthorized cell phone use; and (c) Gray's truck was unroadworthy, which the defendant knew or should have known, and therefore it was intentionally being operated without regard for the driving public,.

119. Gray self-promotes that its in-house repair division performs "Comprehensive Truck Repair Services." https://www.gwgtrucking.com/truck-repairs.

120. Without border exclusion, constraint, or limitation as to type of vehicle, Gray markets expertise to the trucking industry—guaranteeing service "Repairs You Can Trust … from experienced technicians"—and it retails this logic: "Nobody wins when your truck is stuck on the side of the road. Keep the rubber on the road with truck repairs from the experts at Gary W. Gray Trucking Inc. We have been serving you since 1969." https://www.gwgtrucking.com/truck-repairs.

121. As to the Gray truck that killed LaTeef, its poor service history and defective mechanics were exposed and memorialized by R. Scott King, an independent expert, unaffiliated with the plaintiffs.

122. Mr. King, a principal automotive/mechanical engineer at DJS Associates, Abington, PA, examined the vehicle post-accident and determined:

"Gray['s] dump truck was poorly maintained. Specifically, the sets of tires on the dump truck were mismatched (different wear and tread patterns) and under-inflated and had evidently been replaced piecemeal. The two steer tires in the front of the truck were not actually steer tires but were replacement trailer tires. In addition, the passenger side steer tire was 10 inches wide whereas the driver side steer tire was 11 inches wide. Finally, the replacement push rod on the driver's side steer tire was longer than on the passenger side. The combination of a wider wheel and longer push rod gave the driver side steer tire more braking power than the passenger side steer tire which gave the dump truck a tendency to pull to the left."

123. Mr. King concludes, "When the dump truck driver slammed on the brakes, the stronger braking on the driver side steer tire caused it to continue left into the path of the [decedent's] tractor."

124. Mr. King's finding bolsters the plaintiffs' entitlement to punitive damages.

125. Plaintiffs' own expert shall also provide a post-accident independent opinion about the deplorable condition of Gray's Sterling LT9500 dump truck.

**WHEREFORE**, plaintiffs demand judgment against Gary W. Gray Trucking, Inc., and Brandon R. Loyle, monetary compensation exceeding $25,000,000.00, including punitive damages, plus interest, costs, funeral and burial expenses and any other relief the Court deems appropriate.

/s/ *Willan F. Joseph* (*PA 63073*)
**WILLAN F. JOSEPH, ESQUIRE**
22 N. Lansdowne Avenue
Lansdowne, PA 19050
WFJ@wefreelaw.com
(610) 259-8900

*Glenn A. Brown*
**GLENN A. BROWN, ESQUIRE**
727 N Market St
Wilmington, DE 19801
glenn.brown@realworldlaw.com
(610) 734-0750

*Attorneys for Plaintiffs*

Dated: October 20, 2023